**FILED**

OCT 1 1 2006

CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 04-53596-ASW |
| DYMOND CONSTRUCTION GROUP, INC., | Chapter 11 |
| Debtor. | |

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM

Before the Court, in the above-captioned chapter 11[1] case, is Carpenter Funds Administrative Office of Northern California's ("Creditor")[2] *Motion For Allowance and Payment of Administrative*

---

[1] Unless otherwise noted, all statutory references are to Title 11, United States Code (the Bankruptcy Code), as it existed when Debtor filed its bankruptcy petition on June 4, 2004.

[2] Creditor performs administrative services for Carpenters Health and Welfare Trust for California, Carpenters Pension Trust Fund of Northern California, Northern California Carpenters Vacation and Holiday Plan, Carpenters Annuity Trust Fund for Northern California, Carpenters Contract Work Preservation Trust Fund, Carpenters Apprenticeship and Training Trust Fund for

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM

*Claim Against Debtor Dymond Construction Group, Inc.* ("Debtor"), seeking allowance and payment of administrative expenses pursuant to 11 U.S.C. § 507(a)(1) for actual and necessary expenses of preserving and protecting property of the estate of the debtor, Dymond Construction Group, Inc. ("Allowance Motion"). Debtor filed a response, opposing Creditor's Allowance Motion on the grounds that: (1) Creditor filed duplicate claims; (2) Creditor overstated its claims; and (3) Creditor is not entitled to an administrative claim ("Opposition").

This matter was briefed and argued and the parties submitted post-hearing briefs. Debtor is represented by Sean M. Jacobson, Esq. of the Law Offices of Cohen and Jacobson; Creditor was previously represented by David A. Bohl, Esq. of Weinberg, Roger and Rosenfeld, a Professional Corporation, and is now represented by Christian L. Raisner, Esq. and Alan G. Crowley, Esq. of Weinberg, Roger & Rosenfeld, a Professional Corporation. The Official Committee of Unsecured Creditors ("Creditors' Committee") is represented by Charles E. Logan, Esq. of the Law Offices of Charles E. Logan. Secured creditor Steve Williams ("Williams") is represented by Kathryn S. Diemer, Esq. of Diemer & Whitman, LLP.

After oral argument, the Court requested that the parties submit post-hearing briefs addressing the issue of whether, under the specific facts presented here, a pre-petition priority claim

---

Northern California and the Carpenters Industry Advancement Trust Fund (collectively, "Carpenter Funds"). The Carpenter Funds are all employee benefit plans established by collective bargaining and trust agreements and are governed by the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(3). Hereinafter, since "Creditor" filed the pleadings on behalf of the "Carpenter Funds," references to "Creditor" includes the "Carpenter Funds."

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM

2

can be transformed into an administrative claim when the contract, which forms the basis for the claim, was not assumed. The Court identified relevant case law for the parties to address in their briefs.

At the time this matter was submitted the only disputed issue remaining for this Court to decide was whether Creditor was entitled to an administrative claim or a pre-petition priority claim. The parties stipulated at the January 20, 2006, hearing that the amount of Creditor's claim, whether determined to be a priority claim or an administrative claim, was $58,251.40.[3]

---

[3] Creditor filed two proofs of claim in Debtor's bankruptcy case. On July 28, 2004, Creditor filed a claim in the amount of $203,843.07 ("First Claim"). The First Claim states that it is a priority claim under §§ 507(a)(3) and (a)(4) in the amount of $185,311.88 and an unsecured claim in the amount of $18,531.19. Of the $185,311.88 priority amount, the claim indicates that $30,427.10 represents a claim under 11 U.S.C. § 507(a)(3) and $154,884.78 under § 507(a)(4). On September 28, 2004, Creditor filed a second priority claim in the amount of $149,284.75 ("Second Claim").

After credit was given for payments made by the Debtor, the parties resolved the issues regarding the amount of Creditor's claim and stipulated at the hearing that the actual amount of the claim is $58,251.40. Creditor retreated from this position somewhat in its post-hearing brief, stating that:

> while the Carpenters Trust Funds agreed that if their claim was determined to be a 507(a)(4) priority claim, then, and only then, would they agree that such a pre-petition priority claim would be for $58,251.40. However, if the Court determines that the Carpenters Trust Funds' claim should be allowed as an Administrative Claim, then the Carpenters Funds' claim of unpaid contributions, for which new consideration was given, is for $98,359.93 plus the attorneys' fees incurred in arguing this Motion before the Court.

Creditor's post-hearing brief at 6:17-22. Because the Court finds that Creditor's claim is entitled to priority, rather than administrative status, the amount of the claim remains undisputed at $58,251.40.

Case: 04-53596    Doc# 369    Filed: 10/11/06    Entered: 10/13/06 09:41:31    Page 3 of 27

1    This Memorandum Decision constitutes the Court's findings of

2 fact and conclusions of law, pursuant to Rule 7052 of the Federal

3 Rules of Bankruptcy Procedure.

4

5                                    I.

6                          STATEMENT OF FACTS

7    On June 4, 2004, Debtor filed a voluntary petition under

8 chapter 11 of the Bankruptcy Code.

9    Debtor is engaged in the construction business, and employs

10 carpenters on construction jobs.  Prior to filing its petition,

11 Debtor entered into a collective bargaining agreement ("CBA") with

12 Carpenters 46 Northern California Counties ("Union") under which

13 the Union agreed to provide Debtor with carpenters to work on

14 Debtor's construction projects.  Debtor paid the Union certain dues

15 and benefits in exchange for the Union providing health care

16 insurance and benefits to Debtor's carpenters.[4]

17    On July 28, 2004, Debtor filed a motion to assume the CBA

18 ("Assumption Motion").  In the Assumption Motion, Debtor explained

19 that it had failed to pay pre-petition dues and benefits called for

20 by the CBA for the months of February, March, April and May of

21 2004, resulting in the Union's suspension of the health care

22 benefits of Debtor's employees.  Debtor sought to assume the CBA

23 / / /

24 / / /

25

26 _____

27    [4] The Union provides these benefits to Debtor's employees
   through Creditor, its servicing agent.  Debtor makes payments
   pursuant to the CBA directly to Creditor.  Creditor filed the claim
28 at issue in this case.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM          4

1  because, Debtor contended, the contract was critical to its

2  continued operations.[5]

3      Debtor's Assumption Motion was opposed by both Williams and the

4  Creditors' Committee, and a hearing on the Assumption Motion

5  occurred on August 2, 2004.  Williams opposed the motion

6  specifically to prevent the creation of an administrative claim for

7  Creditor.[6]  At the hearing, Debtor, Creditor, Williams and the

8  Creditors' Committee entered into an interim agreement whereby the

9  Debtor agreed to remain current on the post-petition union dues[7]

10 payments and make one additional monthly payment to be applied to

11 the February 2004 delinquency, and the hearing on the Assumption

12 Motion was continued to September 2, 2006.  The Court instructed

13 the parties to attempt to reach a mutually agreeable resolution

14 prior to the continued hearing.

15     At the September 2, 2004, hearing, Debtor, Creditor, Williams

16 and the Creditors' Committee announced that they wished to enter

17 into a stipulation to resolve the Assumption Motion

18 ("Stipulation").  At the hearing, Debtor stated that the payments

19

20     [5] See July 28, 2004, Declaration of Kent Caskey in support of
    the Assumption Motion ("Caskey Declaration") at 2:18-21.

21

22     [6] See February 3, 2006, Declaration of Kathryn Diemer in
    support of Debtor's Opposition ("Diemer Declaration"), ¶ 2, and the
    February 3, 2006, Declaration of Lawrence A. Jacobson in support of

23  Debtor's Opposition, ¶ 2.

24     [7] The parties, both in their papers and at the hearings on
    this matter, used the terms "union dues" and "fund contributions"

25  interchangeably.  It appears to the Court that the proper term for
    the payments at issue is "fund contributions."  However, because

26  the language of the Stipulation and Order refers to "union dues,"
    for the sake of consistency, this decision will refer to the

27  payments owed by Debtor to Creditor pursuant to the CBA as "union

28  dues."

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    5

pursuant to the Stipulation were to be applied toward Creditor's claim as filed and as scheduled by the Debtor as a priority claim under § 507(a)(3) and (4). Mr. Bohl, counsel for Creditor, specifically assented to such treatment of Creditor's claim.[3] At the hearing, Counsel for Williams articulated on the record that the negotiations leading to the Stipulation (involving herself, counsel for Debtor, Creditor and the Creditors' Committee) specifically did not contemplate assumption of the CBA. In fact, according to the declaration of Williams' counsel, this was the key point in the negotiations, and neither Williams nor the Creditors' Committee would have agreed to any resolution that gave Creditor an administrative claim.[9] The consent of secured creditor Williams was required because the Debtor used Williams' cash collateral to pay Creditor pursuant to the Stipulation.[10] The parties, including counsel for Creditor, signed off on the Stipulation.

On or about September 3, 2004, this Court entered an order approving the Stipulation ("Order"), pursuant to which the Assumption Motion was resolved as follows:

_____

[8] See Exhibit "E" to the November 1, 2005, declaration of Alan Crowley in support of Creditor's Allowance Motion ("Crowley Declaration"), which is a copy of the transcript from the September 2, 2004, hearing ("September 2, 2004, Transcript") at 4:11-23.

[9] See September 2, 2004, Transcript at 6:16-25. See also Diemer Declaration at 2:19-25.

[10] Williams agreed only to the use of his cash collateral for the purpose of making payment for the first month of delinquent pre-petition union dues. The parties understood that any other payment toward the delinquency would be made out of profits. Diemer Declaration at 2:10-12.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    6

1    (1) the [CBA] will **not** be assumed at this time as requested
2    by the [Assumption Motion]; (2) Debtor will stay current on
     payment of the union dues; (3) Debtor **is permitted** to cure
3    the pre-petition arrearages in the union dues over a period
     of three months, with one delinquent payment to be made
4    each month along with the current dues; and (4) that
     benefits will be restored on an ongoing basis, with full
5    restoration of all benefits to occur upon receipt of the
     final cure payment.

6    Order at 2:2-7 (emphasis added).  Debtor remained current on

7    payment of the post-petition union dues.  However, Debtor was

8    unable to make all of the permitted payments on the pre-petition

9    arrearage.

10      Although the terms of the Stipulation and Order stated that

11   health benefits for the pre-petition period would be restored only

12   upon Debtor making the final cure payment, Creditor in fact,

13   because of its own internal mistake, granted credit to Debtor's

14   employees in September 2004, for health care coverage for the pre-

15   petition months of March, April, May and June 2004, for which

16   Creditor had not received full payment.  Creditor estimated that

17   Debtor's carpenters submitted claims for benefits totaling

18   $18,051.00 for May and $15,539.00 for June.[11]  Creditor did not

19   supply any figures for the months of March and April.

20      Creditor's Allowance Motion stated that Creditor gave credit to

21   Debtor's employees for health care benefits because of Debtor's

22   repeated representations that it would make double payments[12] to

23   _____

24      [11] See Crowley Declaration, ¶ 12.  In support of these
     estimates, Creditor attached an untitled spreadsheet to the Crowley
25   Declaration as Exhibit 'G' stating the figures for the estimated
     benefits provided to Debtor's employees.

26
       [12] For example, when the August 2004 payment was due, Debtor
27   would pay Creditor the equivalent of two monthly dues payments --
     one for the current month (August) and one to be applied to the
28   delinquent monthly payments (March 2004).

     MEMORANDUM DECISION
     DENYING CREDITOR'S MOTION FOR ALLOWANCE
     AND PAYMENT OF ADMINISTRATIVE CLAIM              7

cure the arrearage.[13]  However, this was directly contradicted by the statement of Creditor's counsel during the January 20, 2006, hearing, when he explained that the credit was given due to an internal error on the part of Creditor.[14]  Creditor's Allowance Motion argued that the credited health coverage caused Debtor's employees to continue working for Debtor, which enabled Debtor to remain in business.[15]

---

[13] See Crowley Declaration, ¶ 10.  As evidence of Debtor's representations that it would cure, Creditor cites to a letter from Debtor's counsel to the parties dated August 17, 2004 ("Letter"). The Letter is attached to the Crowley Declaration as Exhibit 'D'. In the Letter, Debtor's counsel stated: "Debtor will stay current with the dues and cure the arrearages over the next three months, with the union releasing the hour banks upon payment of the delinquent months."

[14] At the January 20, 2006, hearing, the following conversation occurred between the Court and Creditor's Counsel Alan Crowley:

Crowley:   The Trust Funds released the banked hours, which allowed
           the Debtor's employees to have health care benefits.  If
           they had only released one month of hours, then Debtor
           would have been back here before the court, asking you
           for more cash collateral or asking for the exact same
           motion to reoccur.  So it was only because the Trust
           Funds released four months of banked hours for health
           care coverage that enabled their employees to continue to
           get health care coverage, to keep their employees around,
           to keep in business.  Only because of that was the Debtor
           kept from coming back to strike the same deal for the
           next month, or from paying over the next few months.  So
           that's a little bit different than these cases, which I
           haven't briefed, and I understand there's a difference...
Court:     Have you read them?
Crowley:   Admittedly no.  But that's the difference here.  They got
           the benefit of four months of health care coverage...
Court:     But why did you do that?
Crowley:   That was an error on the part of the Trust Funds with
           respect to the way their computer system credits hours to
           employees.

[15] Debtor admitted before entering into the Stipulation that some agreement with the Union concerning payment for employee

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                        8

Debtor asserted that, in addition to the clear language of the Stipulation and Order, Creditor consistently maintained that it would not release the pre-petition benefits until Debtor cured the entire delinquency.[16] Debtor explained that (1) it did not know that Creditor had credited any employees for health care benefits until Creditor filed the Allowance Motion,[17] (2) Debtor drafted its disclosure statement to explain that the pre-petition health care benefits would be released upon payment of Creditor's priority

benefits was necessary for Debtor to remain in business. The Debtor stated that:

> The union has suspended the health care benefits of the union carpenters working for Debtor because the dues have not been paid. Two carpenters left employment with Debtor on June 26, 2004, due primarily to the suspension of the health benefits, and one more has given notice of his intent to terminate his employment. Additionally, Debtor is unable to employ other or replacement carpenters through the union hall assignment system because the union will not send those workers until arrangements are made for cure of the arrearages. Due to the fact that Debtor is engaged in the construction industry, the continued employment of carpenter employees that are represented by the union is critical to the continued operation of Debtor's business.

Caskey Declaration, ¶¶ 4-5 (emphasis added).

[16] According to Debtor: "During the negotiations, Mr. Bohl, counsel for [Creditor], made it very clear that no back benefits would be restored until payment was received on priority portions of the arrears." February 3, 2006, Declaration of Lawrence Jacobson, ¶ 4.

[17] The period of time between Creditor's crediting of the health benefits for the pre-petition period and the filing of the Allowance Motion, during which Debtor was unaware of the credit, was more than a year. Creditor granted the credit sometime in September 2004. The Allowance Motion was filed on November 11, 2005.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    9

claim,[18] and (3) Debtor paid in full for all post-petition benefits it received from Creditor.[19]  Creditor does not challenge these factual assertions.

Creditor now seeks allowance of an administrative claim for delinquent pre-petition union dues.[20]  Debtor objects to Creditor's claim.  While conceding that Creditor has a valid claim for the unpaid, pre-petition union dues, Debtor contends that the full claim should be treated as an unsecured priority claim pursuant to §507(a)(3) and (4).

Debtor's chapter 11 plan ("Plan") was confirmed on February 1, 2006.  The Plan did not provide for assumption of the CBA.  Creditor did not object to confirmation of the Plan.

---

[18] Debtor's counsel stated: "Indeed, Dymond was not aware that those benefits were released until review of the Motion, and accordingly had drafted its Disclosure Statement to include that those back benefits would be released upon payment of the priority claim."  November 21, 2005, Declaration of Lawrence Jacobson in support of Debtor's Opposition, ¶ 8.

[19] Debtor stated that:

The only benefit [sic] conferred by [Creditor] during the post-petition period are the benefits which have been provided to the carpenters on an ongoing basis.  Debtor has paid the dues to [Creditor] as they have become due in the post-petition period.  Due to the fact that these funds have been current during the post-petition period, no administrative claim exists, as payment has been made for any benefit.

November 21, 2005 Declaration of Diane McKee in support of Debtor's Opposition, ¶ 6.

[20] See n.7, supra, regarding the interchangeable use of the terms "union dues" and "fund contributions."

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    10

ARGUMENTS

## A. Creditor's Arguments

Creditor argued that Debtor implicitly assumed the CBA by not rejecting it under 11 U.S.C. § 1113 and by continuing to make payments under the CBA. Creditor asserted that, due to Debtor's repeated insistence that it would make double payments to cure the arrears and its continued operation under the terms of the CBA, the terms of the Stipulation and Order are inconsequential in determining whether Creditor's claim is entitled to administrative status. Creditor cited In re Roth American, Inc., 975 F.2d 949 (3d Cir. 1992) and In re Adventure Resources, Inc., 137 F.3d 786 (4th Cir. 1994) in support of its assertion that a debtor can impliedly assume a collective bargaining agreement. In Roth American, the Third Circuit agreed with the union's argument that the debtor's failure to reject the collective bargaining agreement in accordance with § 1113 resulted in assumption by operation of law.[21]  975 F.2d at 957.  In Adventure Resources, the Fourth Circuit followed the decision in Roth American, holding that the collective bargaining agreement was assumed due to the debtor's failure to reject pursuant to § 1113.  137 F.3d at 798.

According to Creditor, since the CBA was assumed under its implied assumption theory, "the expenses and liabilities incurred may be treated as administrative expenses." Id. (citing NLRB v.

---

[21] However, the Third Circuit immediately cautioned that "it simply does not follow, as the Union contends, that all claims under unrejected collective bargaining agreements are entitled to first priority." Roth American, 975 F.2d at 957.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    11

1   Bildisco and Bildisco, 465 U.S. 513, 532 (1984)). Creditor argued

2   that these benefits were necessary expenses to preserve Debtor's

3   estate and therefore should be treated as administrative expenses

4   under §§ 503(b)(1)(A) and 507(a)(1). Section 507(a)(1) assigns

5   first priority to "administrative expenses allowed under section

6   503(b) of this title, and any fees and charges assessed against the

7   estate under chapter 123 of title 28." 11 U.S.C. § 507(a)(1).

8   Section 503(b)(1)(A) provides: "[a]fter notice and a hearing, there

9   shall be allowed administrative expenses, other than claims allowed

10  under section 502(f) of this title, including -- (1)(A) the actual,

11  necessary costs and expenses of preserving the estate, including

12  wages, salaries, or commissions for services rendered after the

13  commencement of the case[.]" 11 U.S.C. § 503(b)(1)(A).

14      In addition, citing the Ninth Circuit BAP decision in In re

15  World Sales, Inc., 183 B.R. 872, 877 (B.A.P. 9th Cir. 1995),

16  Creditor argued that it provided Debtor with "new consideration"

17  when it credited Debtor's employees with health benefits. The

18  debtor in World Sales was party to a collective bargaining

19  agreement that was in effect at the time it filed its chapter 11

20  petition. 183 B.R. at 873. Eighteen days after filing, the debtor

21  laid off its employees and sold its operation. Id. The debtor

22  never attempted to modify or reject its collective bargaining

23  agreement. Id. The services for which the creditor sought an

24  administrative claim related to post-petition employee benefits.

25  Id. at 874. The BAP stated that, in determining whether a claim is

26  entitled to administrative status, the court "must look not only to

27  the benefit to the estate, but also to the consideration due the

28  creditor for providing such benefit." Id. at 877. Where the

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    12

1  benefit for which payment is sought was rendered post-petition,

2  "the payment owing by the estate must be afforded administrative

3  priority." Id. Following the BAP's reasoning, Creditor contended

4  that it provided post-petition value to Debtor through the credited

5  health benefits, which constitutes "new consideration," entitling

6  its claim to administrative status under § 507(a)(1). According to

7  Creditor, the credit enabled Debtor to retain its carpenters, thus

8  providing a substantial benefit to Debtor.

9      Creditor attempted to distinguish the current matter from In re

10  Certified Air Technologies, Inc., 300 B.R. 355 (Bankr. C.D. Cal.

11  2003). In that case, the bankruptcy court held that pre-petition

12  claims for wages and benefits arising from an unrejected collective

13  bargaining agreement were not administrative expenses. 300 B.R. at

14  369. Creditor argued that the creditor in Certified Air, unlike in

15  this case, did not provide the debtor with a post-petition benefit.

16  Creditor maintained that it provided a post-petition benefit to

17  Debtor by covering Debtor's employees' pre-petition health

18  benefits, including payment of insurance claims arising during the

19  unpaid pre-petition period. Creditor asserted that the credit

20  amounted to a post-petition loan that was extended to Debtor based

21  on Debtor's representations that it would cure the pre-petition

22  arrearage. Creditor argued that the credit was an actual and

23  necessary expense of preserving and protecting the property of the

24  Debtor pursuant to § 503(b)(1)(A) because, without the credit,

25  Debtor would have lost its carpenters.

26      In a similar vein, Creditor contended that its reimbursement

27  for the credited benefits should be treated as an administrative

28  expense due to the "necessity of payment" doctrine. Generally

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                13

speaking, this doctrine may be invoked to permit payment by the debtor on pre-petition claims prior to confirmation where the payment is deemed essential to the debtor's continued operation. Nextwave Personal Comm., Inc. v. FCC, 254 F.3d 130, 136 (D.C. Cir. 2001).[22] Consistent with its argument under § 503(b)(1)(A), Creditor asserts that the pre-petition health care coverage it provided to Debtor was essential to Debtor's continued operation, and should be treated as an administrative expense pursuant to the "necessity of payment" doctrine.

**B. Debtor's Arguments**

Debtor asserted that: (1) Creditor's mistake in releasing the benefits for the pre-petition months was not an "actual or necessary" expense to preserve and protect its property; and (2) the parties specifically agreed that the benefits that Creditor released, and with which Debtor's employees were credited, were only to be released if Debtor cured all its delinquent pre-petition payments under the CBA. The language of the Stipulation "permitted," but did not require, Debtor to cure. Debtor was, in fact, unable to do so. Debtor explained that it paid for all of the post-petition benefits it received. Debtor argued that if, as Creditor contended, the provision of benefits conferred any benefit upon Debtor, then it was an incidental benefit and "[a]n incidental benefit is not a sufficient basis to grant an administrative

---

[22] In support of this contention, Creditor cited a number of bankruptcy court decisions outside the Ninth Circuit. See In re Equalnet Comm. Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000); In re Cajun Elec. Power Co-op., Inc., 230 B.R. 715 (Bankr. M.D. La. 1999); In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La. 1989); In re Columbia Packing Co., 35 B.R. 447 (Bankr. D. Mass. 1983).

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM

14

1   priority." <u>In re D.W.G.K. Restaurants, Inc.</u>, 84 B.R. 684, 689

2   (S.D. Cal. 1988).[23]  Debtor's counsel stated in his declaration that

3   the Debtor was not even aware of Creditor's mistake[24] (and Creditor

4   has not alleged that the Debtor was aware) and Debtor therefore

5   argued that an unnoticed mistake could not constitute a substantial

6   contribution and was in no way necessary for preserving the estate.

7   Debtor maintained that no case law exists that supports

8   transformation of Creditor's pre-petition claim into an

9   administrative claim under the facts presented here.

10      Debtor asserted that the facts of the instant case are similar

11  to the facts in <u>Roth American</u>, where a collective bargaining

12  agreement was neither rejected nor assumed.  The Third Circuit in

13  <u>Roth American</u> determined that claims for wages and benefits could

14  be granted administrative status only to the extent that the wages

15  and benefits were: (1) for a period of time between the

16  commencement of the bankruptcy case and the termination of

17  employment; and (2) compensation for services rendered post-

18  petition.  975 F.2d at 957-958.  Debtor asserted that the benefits

19  at issue here accrued pre-petition and therefore, under <u>Roth</u>

20

21      [23] <u>D.W.G.K. Restaurants</u> involved a creditor's claim for

22  attorney's fees as an administrative expense under § 503(b)(3)(D).
    The court refused to grant administrative status to creditor's

23  claim, holding that the services creditor's counsel provided
    "satisfied neither the 'substantial contribution' nor the 'actual

24  and necessary' requirements of § 503(b)."  84 B.R. at 689.  The
    court commented that, "[t]he integrity of § 503(b) can only be

25  maintained by strictly limiting compensation to extraordinary
    creditor actions which lead directly to significant and tangible

26  benefits to the creditors, debtor, or the estate."  <u>Id</u>. at 690.

27      [24] <u>See</u>, <u>e.g.</u>, the November 21, 2005, Declaration of Lawrence

28  Jacobson in support of Debtor's Opposition, ¶ 8.

Case: 04-53596   Doc# 369   Filed: 10/11/06   Entered: 10/13/06 09:41:31   Page 15 of
27

1    American, Creditor's claim would only be entitled to priority

2    status and not administrative status.

3        Debtor acknowledged that the Fourth Circuit's opinion in

4    Adventure Resources is somewhat supportive of Creditor's position,

5    but distinguished that case on the facts.  There, the debtor was

6    held to have assumed a collective bargaining agreement by failing

7    to modify or reject it in accordance with § 1113(f).  137 F.3d at

8    798.  By assuming the collective bargaining agreement, the debtor

9    undertook an obligation to cure all existing defaults under the

10   agreement.  Id.  The post-petition assumption of the contract

11   effectively transformed the pre-petition claims thereunder into

12   post-petition claims entitled to administrative status.  Id.

13   Debtor insists that most important factual distinction is that the

14   contract in Adventure Resources had been assumed -- something that

15   the parties in this matter specifically agreed not to do, as

16   evidenced in the Stipulation and Order.  Therefore, Debtor argued

17   that Adventure Resources is inapposite to the disposition of this

18   dispute.

19       Debtor focused its analysis on Certified Air because it

20   specifically addressed the issue of the priority of a claim for

21   arrears under a collective bargaining agreement.  Debtor explained

22   that the bankruptcy court in Certified Air recognized that the

23   "plain language of a statute is conclusive as to its meaning when

24   the statutory scheme is coherent and consistent."  300 B.R. at 336.

25   Furthermore, the court in Certified Air determined that since §

26   1113 is silent as to priorities, it must be inferred that Congress

27   did not intend to grant administrative priority to arrears under

28   collective bargaining agreements.  Id. at 367.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    16

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1    Debtor argued that Creditor specifically agreed, through the

2    Stipulation, Order and counsel's statements at hearings before the

3    Court, that its claim would not be granted administrative status

4    and that the CBA would not be assumed.  Debtor urged the Court to

5    consider only the Stipulation, Order and prior testimony to

6    evaluate the priority of Creditor's claim.

7

8                                    III.

9                                  ANALYSIS

10    The party seeking allowance of an administrative claim has the

11    burden of proving that its claim is entitled to administrative

12    priority.  D.W.G.K. Restaurants, 84 B.R. at 689.  "[S]ince an

13    administrative expense constitutes a priority claim, any recovery

14    must be subject to strict scrutiny by the court," and therefore the

15    party seeking administrative priority "bears a heavy burden."  Id.

16    Limiting administrative priority, "keep[s] fees and administrative

17    expenses at a minimum so as to preserve the estate for the benefit

18    of all creditors."  In re Sedona Institute, 220 B.R. 74, 79 (B.A.P.

19    9th Cir. 1998).

20    **A. Creditor's Implied Assumption Argument**

21    The parties agree that the CBA was valid and enforceable at the

22    time of the bankruptcy filing.  Section 1113 sets forth the

23    procedure for the rejection of collective bargaining agreements.

24    Section 1113(f) provides that "[n]o provision of this title shall

25    be construed to permit a trustee to unilaterally terminate or alter

26    any provisions of a collective bargaining agreement prior to

27    compliance with the provisions of this section."  11 U.S.C. §

28    1113(f).  Creditor argued that because Debtor did not reject the

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                      17

1 CBA pursuant to the requirements of § 1113, Debtor impliedly

2 assumed it and therefore the pre-petition arrears were transformed

3 into an administrative expense.

4     It is true that, under certain circumstances, a collective

5 bargaining agreement may be assumed as a result of the debtor's

6 failure to reject the agreement in accordance with § 1113. Section

7 1113 "plainly imposes a legal duty on the debtor to honor the terms

8 of a collective bargaining agreement, at least until that agreement

9 is properly rejected." Adventure Resources, 137 F.3d at 796. It

10 is likewise true that the assumption of a collective bargaining

11 agreement, either express or implied, may convert a pre-petition

12 claim into an administrative expense. Id. at 798. However, while

13 § 1113 clearly prohibits unilateral modification of a collective

14 bargaining agreement, it encourages mutually satisfactory

15 modification.[25] In fact, consensual modification of the agreement

16 must be attempted before it may be rejected. 11 U.S.C. §

17 1113(b)(1). Based on the specific language of the Stipulation and

18 Order, the CBA was neither assumed nor rejected, but was

19 effectively modified with the consent of the parties. The Court is

20 convinced by these documents, combined with the declarations of

21 record and arguments of counsel, that the CBA was not implicitly

22 assumed, but rather was explicitly not assumed.

23

24     [25] See Adventure Resources, 137 F.3d at 796, n.13 ("If the
25 debtor believes that its obligations under a collective bargaining
agreement would inhibit its effective reorganization, it must first
26 make a good faith effort to negotiate a modification of the
contract with its employees' authorized representative"); see also,
27 United Food and Commercial Workers Union, Local 328, AFL-CIO v.
Almac's Inc., 90 F.3d 1, 6 (1st Cir. 1996); Roth American, 975 F.2d
28 at 956, n.8.

Case: 04-53596   Doc# 369   Filed: 10/11/06   Entered: 10/13/06 09:41:31   Page 18 of
27

1   This conclusion is inescapable in light of the fact that the

2   Stipulation was the result of lengthy negotiations involving not

3   only Debtor and Creditor, but Williams and the Creditors' Committee

4   as well.  As the bankruptcy court in Equalnet (a case Creditor

5   cited) stated in dicta:

6       In a bankruptcy context, some issues clearly involve
        interests upon which the parties such as the debtor, the
7       unsecured creditor's committee, the major lenders, and
        major unsecured groups such as bondholders can agree.  If
8       there is agreement among all of the constituencies and if
        each of them is a sophisticated, competently represented,
9       knowledgeable constituency, the Court is generally loathe
        to substitute its business judgment about the consequences
10      of the proposed course of action for that of the parties
        that hold the real financial interest.

11

12  Equalnet, 258 B.R. at 370.  All of the constituencies, each

13  represented by competent counsel, entered into negotiations in this

14  case regarding, inter alia, what was to be done with the CBA, and

15  the treatment to be given Creditor's pre-petition claim for health

16  benefits provided thereunder.  The end result of those negotiations

17  was a Stipulation which specifically stated that the CBA "will not

18  be assumed at this time" and "permitted," but did not require, that

19  Debtor cure the pre-petition arrears.  Williams' counsel testified

20  that the status to be accorded Creditor's claim was a key point in

21  these negotiations, and neither her client, nor the Creditors'

22  Committee would have agreed to any resolution which resulted in an

23  administrative claim.[26]  Williams permitted Debtor to use his cash

24  collateral to continue its business on this basis.  This Court will

25  not, under these circumstances, upset the agreement reached by the

26  parties in this case.  To allow Creditor to obtain administrative

27

28      [26] See Diemer Declaration, ¶ 5.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    19

status for its claim under these circumstances would be both inequitable and contrary to the clearly expressed intention of the parties.

**B. Creditor's Necessity of Payment Argument**

The Court is likewise unswayed by Creditor's "necessity of payment" argument. That doctrine is rooted in pre-Code decisions, and is to be invoked only in extraordinary circumstances. In re CoServ, LLC, 273 B.R. 487, 491-92 (Bankr. N.D. Tex. 2002). "[T]he sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

This Court is not aware of any case where the necessity of payment doctrine has been successfully invoked by a creditor where there is a specific agreement that there will be no assumption, and the creditor agreed to a specific treatment of its claim. Nor is the Court aware of any case where, long after the theoretical "necessity" had arisen, a creditor (rather than a Debtor) used the doctrine to convert a pre-petition claim into an administrative expense. Each of the cases Creditor cited -- none of which is binding on this Court -- is, in any event, distinguishable. Two of the cases each involved a chapter 11 debtor (rather than a creditor) seeking to invoke the doctrine to authorize immediate payment of pre-petition expenses it considered necessary to its continued operations. Equalnet, 258 B.R. at 369; Gulf Air, 112 B.R. at 153. That is certainly not the case here, where Creditor invoked the doctrine to gain administrative status for its claim, and the Debtor opposed.

Case: 04-53596    Doc# 369    Filed: 10/11/06    Entered: 10/13/06 09:41:31    Page 20 of 27

1    The <u>Columbia Packing</u> case Creditor cited, a bankruptcy court

2   case from the District of Massachusetts, is similarly unsupportive

3   of Creditor's position.  It involved a debtor's apparently

4   uncontested request to pay pre-petition expenses, prior to plan

5   confirmation, in accordance with the priority scheme established by

6   § 507, which the court granted -- without even mentioning any

7   "necessity" of the payment.  35 B.R. at 448.  Most importantly, the

8   case did not involve a negotiated agreement between the debtor and

9   its creditors, which is the exact situation here.

10   Likewise, the holding in <u>Cajun Electric</u> cannot be read to

11   support Creditor's argument that the necessity of payment doctrine

12   entitles its claim to administrative status in this case.  In

13   assessing one of the settlements proposed in a trustee's plan of

14   reorganization, the trustee in <u>Cajun Electric</u> contended that the

15   necessity of payment doctrine would provide a valid defense to a

16   preference action.  The objectors to the settlement and plan

17   countered the trustee's argument by asserting that the doctrine had

18   been limited to employee wage claims and certain other claims

19   otherwise entitled to priority under § 507.  230 B.R. at 754-755.

20   The bankruptcy court merely weighed the availability of preference

21   defenses as a factor in determining the reasonableness of the

22   proposed settlement.  The context in which the court addressed the

23   necessity of payment doctrine -- evaluating proposed settlements --

24   is completely unlike the factual scenario in this case, where

25   Creditor attempted to invoke the doctrine to obtain administrative

26   status for its claim.

27

28

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    21

**C. Treatment of a Pre-petition Claim Where the CBA is Not Assumed**

We next turn to the manner in which Creditor's claim relating to a pre-petition expense under an unassumed collective bargaining agreement is to be treated.  This Court finds the analysis in Certified Air persuasive.  In Certified Air, the bankruptcy court followed decisions in the Second, Third and Fourth Circuits stating that a claim arising from a default under an unassumed collective bargaining agreement is not automatically treated as an administrative claim.  Certified Air, 300 B.R. at 369.  Instead, when the claim relates to a pre-petition period, it is treated according to the priorities contained in § 507.  Id.; see also, Adventure Resources, 137 F.3d at 797; In re Ionosphere Clubs, Inc., 22 F.3d 403, 408 (2d Cir. 1994); Roth American, 975 F.2d at 956. Nothing in § 1113(f) or its legislative history indicates that Congress intended for that section to override the priorities set forth in § 507.  Certified Air, 300 B.R. at 366-367. Reconciliation of § 1113 with § 507 is preferable to an interpretation that one section conflicts with or overrides the other, and these sections should be interpreted to achieve equality of distribution as a fundamental bankruptcy principle.  Id. at 369.

Although Creditor relied on World Sales for its argument that it had provided Debtor with a post-petition benefit akin to a "loan" when it issued the credit to Debtor's employees, that case is distinguishable.  World Sales involved a claim for payments due under an unrejected collective bargaining agreement for post-petition work arising out of a post-petition breach of a collective bargaining agreement.  Due to the post-petition nature of the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

claim, it was entitled to treatment as an administrative expense. However, in this case, Creditor's claim is for pre-petition arrears arising from a pre-petition breach of a collective bargaining agreement that was not assumed. In addition, to the extent that Creditor's post-petition loan argument is founded upon the idea that Creditor granted the credit based upon Debtor's representations that it would, in fact, cure the defaults, the Stipulation provides otherwise and the Court is similarly unconvinced. The language of the Letter -- which Creditor repeatedly cites as evidence of Debtor's assurances[27] -- is perfectly consistent with the language of the Stipulation -- that Creditor would release the benefits upon payment of the delinquency, and not before. This fact, coupled with the admission of Creditor's counsel that the benefits were credited because of an internal error, lead the Court to conclude that the credit was not, in fact, given in reliance on Debtor's representation.[28]

Creditor's unilateral mistake cannot transform the pre-petition debt into an administrative claim. The Order permitting Debtor to pay the arrearage over time was intentionally so structured to avoid the creation of an administrative claim at the insistence of Williams and the Creditors' Committee. Creditor's mistake in crediting Debtor's employees with the benefits for the unpaid pre-petition period cannot alter the effect of the Stipulation and

_____

[27] See Crowley Declaration, Ex. D.

[28] Even if this were the case (despite the evidence to the contrary), in the face of the language of the Stipulation, any such reliance on Creditor's part was simply misplaced.

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                    23

1  Order.  Moreover, Debtor was completely unaware both that Creditor

2  was providing such benefits to Debtor's employees and that Creditor

3  had made this mistake.

4       The Court is not aware of any authority that would, under the

5  specific facts of this case, transform Creditor's claim for a pre-

6  petition expense under an unassumed collective bargaining agreement

7  from a priority claim into an administrative claim, whether or not,

8  as Creditor argues, that expense was "necessary" for preservation

9  of the estate.  Accordingly, the Court declines to address whether,

10 and/or the extent to which, any benefit conferred on Debtor by

11 Creditor's mistaken credit of benefits for the unpaid pre-petition

12 period, of which Debtor was completely unaware, could constitute an

13 actual and necessary expense under § 503(b)(1)(A) in a different

14 factual setting (<u>i.e.</u>, in the absence of the Stipulation and

15 Order).

16      The Court finds that Creditor's claim is not an administrative

17 claim but is instead a priority claim under §§ 507(a)(3) and (4).

18 Section 507(a)(4) specifies fourth priority for:

19      allowed unsecured claims for contributions to an employee
        benefit plan--
20           (A) arising from services rendered within 180 days
        before the date of the filing of the petition or the date
21      of the cessation of the debtor's business, whichever occurs
        first; but only
22           (B) for each such plan, to the extent of--
                  (i) the number of employees covered by each such
23           plan multiplied by $4,925; less
                  (ii) the aggregate amount paid to such employees
24           under paragraph (3) of this subsection, plus the
             aggregate amount paid by the estate on behalf of
25           such employees to any other employee benefit
             plan.

26

27

28

1    11 U.S.C. § 507(a)(4). According to § 507(a)(4), the amount must

2    be reduced by the amount of claims under § 507(a)(3). Section

3    507(a)(3) provides third priority to allowed unsecured claims:

4          to the extent of $4,925 for each individual or
       corporation, as the case may be, earned within 90 days
5      before the date of the filing of the petition or the date
       of the cessation of the debtor's business, whichever occurs
6      first, for-
             (A) wages, salaries, or commissions, including
7      vacation, severance, and sick leave pay earned by an
       individual; or
8            (B) sales commissions earned by an individual or by a
       corporation with only 1 employee, acting as an independent
9      contractor in the sale of goods or services for the debtor
       in the ordinary course of the debtor's business if, and
10     only if, during the 12 months preceding that date, at least
       75 percent of the amount that the individual or corporation
11     earned by acting as an independent contractor in the sale
       of goods or services was earned from the debtor.

12

13   11 U.S.C. § 507(a)(3).

14        The maximum limit of Creditor's employee benefit contribution

15   claim pursuant to § 507(a)(4) is $128,050 -- calculated by

16   multiplying the number of participants (26) by $4,925.00 (the

17   statutory claims' cap). This amount is then reduced by the amount

18   claimed by Creditor under § 507(a)(3), or $30,427.10. Accordingly,

19   Creditor's claim under § 507(a)(3) is $30,427.10, and its claim

20   under § 507(a)(4) is $97,622.90 ($128,050 - $30,427.10). The

21   § 507(a)(4) claim is further reduced by payments made by Debtor

22   totaling $69,798.60, yielding a final claim amount of $27,824.30.

23   Thus, as the parties stipulated at the January 20, 2006 hearing,

24   the total amount of Creditor's claim is $58,251.40. The Court

25   finds that Creditor has a priority claim as follows: $30,427.10

26   under § 507(a)(3) and $27,824.30 under § 507(a)(4), for a total

27   claim of $58,251.40.

28

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM                         25

IV.

<u>CONCLUSION</u>

For the reasons stated above, Creditor's Allowance Motion is denied. Pursuant to the parties' stipulation, made on the record, Creditor is entitled to a priority claim under §§ 507(a)(3) and (4) in the amount of $58,251.40.

Counsel for Debtor shall submit a form of order so providing, after review by Creditor as to form.

Dated: '0/11/06

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

MEMORANDUM DECISION
DENYING CREDITOR'S MOTION FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIM

26

Court Service List

Carpenter Funds Administrative Office
Field Services
265 Hegenberger Road, #100
Oakland, CA 94621

Lawrence A. Jacobson, Esq.
Law Offices of Cohen and Jacobson
900 Veterans Blvd. #600
Redwood City, CA 94063

Dymond Construction Group, Inc.
1705 Russell Ave.
Santa Clara, CA 95051

Christian L. Raisner, Esq.
Weinberg, Roger & Rosenfeld
180 grand Avenue, Suite 1400
Oakland, CA 94612

Kathryn S. Diemer, Esq.
Law Offices of Diemer and Whitman
2 North Second Street, #290
San Jose, CA 95113

David A. Bohl, Esq.
Weinberg, Roger and Rosenfeld
180 Grand Avenue #1400
Oakland, CA 94612

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

David J. Rapson
Guttenberg, Rapson and Colvin
1111 Broadway #1500
Oakland, CA 94607

Charles E. Logan
Law Offices of Charles E. Logan
95 S Market St. #660
San Jose, CA 95113